# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DEEBA ABEDI, individually and on behalf of all other similarly situated,**<br><br>**Plaintiff**<br><br>v.<br><br>**NEW AGE MEDICAL CLINIC PA, and DOES 1-10 inclusive,**<br><br>**Defendant** | CASE NO. 1:17-CV-1618 AWI SKO<br><br>**ORDER ON DEFENDANTS' MOTIONS TO DISMISS AND COMPEL ARBITRATION**<br><br>(Doc. Nos. 5, 6) |

This case arises from Plaintiff Deeba Abedi's ("Abedi") unsolicited receipt of numerous advertisements for services and business specials by Defendant New Age Medical Clinic PA ("New Age) through text messages. Abedi, on behalf of herself and a putative nationwide class, alleges violations of the Telephone Consumer Protection Act (47 U.S.C. § 227) ("TCPA"). Currently before the Court are three motions by New Age: a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a Rule 12(b)(3) motion to dismiss for improper venue, and a motion to compel arbitration. For the reasons that follow, New Age's Rule 12(b)(2) motion will be granted and all other motions will be denied as moot.

## **BACKGROUND**

From the Complaint, in April 2017, Abedi began receiving text messages on her cell phone ending in 3830 from New Age. New Age used Abedi's cell phone for purposes of notifying her of various promotions on New Age's products. New Age's text messages included hyperlinks to its

website. These text messages were sent using New Age's SMS Blasting Platform, which is a form of automated dialing system. Abedi incurred a charge for receiving New Age's text messages. Abedi alleges that she was never a customer of New Age, never provided her cell phone number to New Age, and never consented to receiving the text messages from New Age. Abedi received text messages from New Age through September 2017.

## **RULE 12(b)(2) FRAMEWORK**

Personal jurisdiction is a constitutional requirement that is meant to protect the interests of a defendant by ensuring that the defendant is not hauled into a distant and inconvenient forum to which he has little or no connection. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980). The plaintiff bears the burden of establishing that personal jurisdiction exists over a defendant. Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011); Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). Where a defendant's motion to dismiss is based on written materials rather than on an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss. Mavrix Photo, 647 F.3d at 1223; Schwarzenegger, 374 F.3d at 800. Although plaintiffs cannot "simply rest on the bare allegations of [their] complaint," uncontroverted allegations in the complaint must be taken as true. Mavrix Photo, 647 F.3d at 1223; Schwarzenegger, 374 F.3d at 800. Courts do not assume the truth of allegations in a pleading which are contradicted by affidavit, but courts do resolve factual disputes in the plaintiff's favor. Mavrix Photo, 647 F.3d at 1223.

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." Daimler AG v. Bauman, 134 S.Ct. 746, 753 (2014); Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015). Since the California "long-arm statute" permits the exercise of personal jurisdiction to the full extent permitted by the U.S. Constitution, a court's personal jurisdiction inquiry centers on whether exercising jurisdiction comports with due process. Daimler, 134 S.Ct. at 753; Picot, 780 F.3d at 1211. In order for a state to exercise personal jurisdiction over a nonresident, the "nonresident generally must have certain minimum contacts

2

with the forum so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Picot, 780 F.3d at 1211.

Specific jurisdiction focuses on "the relationship among the defendant, the forum, and the litigation," and the "defendant's suit-related conduct must create a substantial connection with the forum State."[1] Walden v. Fiore, 134 S.Ct. 1115, 1121 (2014). Stated differently, "[i]n order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." Bristol-Myers Squibb Co. v. Superior Ct., 137 S. Ct. 1773, 1781 (2017) (quoting Goodyear Dunlop Tires Operat5ions, S.A. v. Brown, 564 U.S. 914, 919 (2011)). The Ninth Circuit utilizes a three part test to determine whether specific jurisdiction exists:[2] (1) the non-resident must purposefully direct his activities or consummate some transaction with the forum or resident thereof; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities, and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. Picot, 780 F.3d at 1211; Schwarzenegger, 374 F.3d at 802. The plaintiff bears the burden of proving the first two prongs, but if the plaintiff is successful, the burden then shifts to the defendant to make a "compelling case" that the exercise of personal jurisdiction would be unreasonable. Picot, 780 F.3d at 1211-12; Mavrix Photo, 647 F.3d at 1228. Personal jurisdiction must exist for each claim asserted. Picot, 780 F.3d at 1211. "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." In re W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d 716, 742 (9th Cir. 2013).

With respect to the first part of "purposeful direction," courts utilize the three-prong

---

[1] There are two types of personal jurisdiction, general and specific. Bristol-Myers Squibb Co. v. Superior Ct., 137 S. Ct. 1773, 1779-80 (2017). Because Abedi does not claim that general jurisdiction exists, the Court will limit its discussion to specific jurisdiction.

[2] The first part of the three part test encompasses two distinct concepts, "purposeful direction" and "purposeful availment." Lazar v. Kroncke, 862 F.3d 1186, 1201 (9th Cir. 2017). "Purposeful availment" is generally used to analyze contract claims, while "purposeful direction" is used to analyze tort claims. Picot, 780 F.3d at 1212. The only claims alleged in this case are for violations of the TCPA. Because TCPA claims sound in tort, see Lowe v. CVS Pharmacy, Inc., 233 F. Supp. 3d 636, 643 (N.D. Ill. 2017); Cayanan v. Citi Holdings, Inc., 928 F. Supp. 2d 1182, 1207-08 (S.D. Cal. 2013), the Court will limit its discussion to "purposeful direction." Cf. Picot, 780 F.3d at 1212.

"effects test." Picot, 780 F.3d at 1213; Schwarzenegger, 374 F.3d at 803. Under the effects test, there is "purposeful direction" by a non-resident defendant if he: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that he knows is likely to be suffered in the forum state. Picot, 780 F.3d at 1214; Schwarzenegger, 374 F.3d at 803. An "intentional act" is "an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." In re W. States, 715 F.3d at 743 n.25. Conduct is "expressly aimed" at a forum if the conduct "directly targets" the forum. Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1129 (9th Cir. 2010). The "express aiming" analysis "depends to a significant degree on the specific type of tort or other wrongful conduct at issue." Picot, 780 F.3d at 1206; Schwarzenegger, 374 F.3d at 807. However, courts are "limited to 'the defendant's suit-related conduct.'" Picot, 780 F.3d at 1215 n.3 (quoting Walden, 134 S.Ct. at 1121). Courts must look "to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Walden, 134 S.Ct. at 1122; Picot, 780 F.3d at 1214. "[T]he plaintiff cannot be the only link between the defendant and the forum," and a "mere injury to a forum resident is not a sufficient connection to the forum." Walden, 134 S.Ct. at 1122, 1125; Picot, 780 F.3d at 1214. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Walden, 134 S.Ct. at 1125; see also Picot, 780 F.3d at 1214.

With respect to the second prong ("arising out of or relating to"), the Ninth Circuit refers to this prong as the "but for" test. In re W. States, 715 F.3d at 742. Under the second prong, "a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action." Id. That is, a plaintiff must show that "but for" the defendant's forum related conduct, the injury would not have occurred. Myers v. Bennett Law Offices, 238 F.3d 1068, 1075 (9th Cir. 2001).

With respect to the third prong ("reasonableness"), the Ninth Circuit considers seven factors: (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the

sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. In re W. States, 715 F.3d at 745; Dole Food Co. v. Watts, 303 F.3d 1104, 1114 (9th Cir. 2002).

### **DEFENDANT'S MOTION**

*Defendant's Argument*

New Age argues that personal jurisdiction is lacking. New Age argues that it does not do business outside of New Jersey, does not solicit on-line and only treats patients in person in New Jersey. New Age argues that it only sent text messages to Abedi's non-California telephone number that she provided. New Age argues that it did not know that the texts were going into California. New Age contends that it does not market to or solicit services in California, and it does not offer services to customers in California. Further, because it has no contacts with California, Abedi's claims do not arise out of contacts with California. Finally, because only text messages were sent to a non-California telephone number, exercising jurisdiction over New Age would be extremely burdensome and unreasonable.

*Plaintiff's Opposition*

Abedi argues that personal jurisdiction exists because there is no dispute that she received the text messages in California. Case law recognizes that there are sufficient minimum contacts for purposes of the TCPA when a plaintiff receives calls made to her cell phone. New Age is speaking out of both sides of its mouth by contesting jurisdiction by conceding that it meant to call Abedi who was living in Merced, but then arguing that it did not mean to call her while she was in California. Courts have rejected these exact same arguments. Because Abedi was living in Merced at the time she received the texts, New Age expressly aimed its conduct at California.

*Relevant Declarations*

James Bock, the owner and president of New Age, declares in relevant part:

> [New Age] offers weight reduction, skin and colonic irrigation treatments. [New Age's] services consist of patients physically coming to a facility to be treated by a physician. [New Age] does not solicit its products online or treat

5

patients without being physically present in one of its clinics.

> Beginning in February 2015, [Abedi] was a patient of [New Age]'s office located [in] Paramus, New Jersey. [Abedi] purchased a service package offered by [New Age] through Groupon.
>
> While [Abedi] currently resides in Merced, California, she was a patient of [New Age]'s New Jersey office prior to her moving to California.
>
> [New Age] is incorporated in the State of New Jersey and has its principal place of business in New Jersey.
>
> [New Age] only has two locations, all of which are located in New Jersey.
>
> [New Age] does not do any business outside of the State of New Jersey.
>
> When [Abedi] signed up to receive services with [New Age], she provided her non-California telephone number for marketing and other purposes.
>
> Any text messages sent by [New Age] to [Abedi] were sent to [Abedi]'s non-California telephone number that she provided.
>
> At no time did [Abedi] notify [New Age] opting out of receiving text messages.
>
> At no time did [Abedi] inform [New Age] that she moved outside of New Jersey.

Bock Dec. ¶¶ 2-11.

In relevant part, Abedi declares:

> In or around February 2015, I purchased a "Groupon" for weight loss services that would be provided by [New Age]. Following the purchase, I redeemed the Groupon on or about February 16, 2015 by going to [New Age's] place of business. During the visit, I was asked to provide my phone number onto a patient intake form.
>
> The intake forum did not advise me that my phone number would be retained by [New Age] for purposes of solicitation calls or text messages, and also did not advise me that by providing my phone number, I was subscribing to receive automated text messages or robocalls. I find such types of calls to be intrusive and harassing, and an invasion of my privacy and peace of mind.
>
> . . . .
>
> I never went back to [New Age]'s place of business after my visit on or about February 16, 2015, and never used [its] services again after that date.
>
> Several months later, beginning in or about September 2015, I began receiving intrusive automated text messages from [New Age], asking me to purchase [its] diet services, and directing me to [its] website to make such a purchase.
>
> The text messages were clearly solicitations because the language contained therein was asking me to purchase goods and services from [New Age], and even

6

> gave me the prices of such products.
>
> . . . .
>
> I was in Merced, California when I began receiving these text messages from [New Age], which was where I received the majority of the text messages.

Abedi Dec. ¶¶ 4, 5, 7, 9, 13.

*Discussion*

As relevant to this case, the TCPA "prohibits any person, absent the prior express consent of a telephone-call recipient, from 'mak[ing] any call . . . using any automatic telephone dialing system . . . to any telephone number assigned to a paging service [or] cellular telephone service.'" Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 666-67 (2016) (quoting 47 U.S.C. § 227(b)(1)(A)(iii)). "[A] text message is a 'call' within the meaning of the TCPA." Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 952 (9th Cir. 2009).

There is no dispute that New Age sent Abedi text messages that were in the nature of a solicitation for the sale of services and products offered by New Age. See Abedi Dec. Ex. A. The Complaint alleges that these texts were accomplished through an automatic dialing system. There is nothing before the Court that disputes Abedi's assertion that she did not consent to receive any of the texts from New Age and that she received the texts from New Age. This conduct clearly implicates 47 U.S.C. § 227(b).

For purposes of personal jurisdiction, sending the text messages is the only conduct by New Age that is arguably aimed at California. However, the evidence before the Court indicates that New Age did not know that it was sending text messages into California. Abedi was a patient/customer of New Age in Paramus, New Jersey in February 2015. New Age does not provide its services outside of New Jersey and nothing contradicts the evidence that New Age does not conduct any business outside New Jersey or in California. Of critical importance, the cell phone number provided to New Age by Abedi was for a non-California number, which the Court takes to mean that the area code corresponds to a location outside of California. There is nothing before the Court that suggests in any way that New Age either knew or should have known that its text messages were sent into California and received by a resident of Merced. Given the nature of the services provided by New Age, the location where New Age conducts all its business, and a

7

cell phone number provided by Abedi that is not a California telephone number, there is no basis for a finding that New Age directly targeted California through the text messages. See Eisenband v. Starion Energy, Inc., 2018 U.S. Dist. LEXIS 79572, *15-*17 (S.D. Fla. May 11, 2018) (in TCPA case, holding that there was no express aiming at Florida where calls were made to a New Jersey area code and no other evidence indicated that the defendant knew that it was calling individuals in Florida); Hastings v. Triumph Prop. Mgmt. Corp., 2015 U.S. Dist. LEXIS 167661, *4-*7 (S.D. Cal. Dec. 15, 2015) (in a TCPA case, holding that there was no express aiming at California where calls were made to an Arizona area code and no other evidence indicated that the defendant knew that it was calling individuals in California); Michaels v. Micamp Merch. Servs., 2013 U.S. Dist. LEXIS 159782, *12 (W.D. Pa. Nov. 8, 2013) (in a TCPA case, holding that there was no express aiming at Pennsylvania where calls were made to a Florida area code and no other evidence indicated that the defendant knew that it was calling individuals in Pennsylvania).

The cases cited by Abedi are distinguishable on a key fact: each case involved receiving "calls" on a number that corresponded to a location within the forum. See Luna v. Shac, LLC, 2014 U.S. Dist. LEXIS 96847, *11 (N.D. Cal. July 14, 2014) (finding purposeful direction "where Shac intentionally sent text messages directly to cell phones with California based area codes, which conduct allegedly violated the TCPA and gave rise to this action, Shac expressly aimed its conduct at California."); Baker v. Carribean Cruise Line, Inc., 2014 U.S. Dist. LEXIS 28960, *6 (D. Ariz. Mar. 6, 2014) (finding personal jurisdiction where the complaint alleged "that Defendant made calls to Plaintiff's Arizona number and the fact that those calls are the basis for Plaintiff's [TCPA] claims."); Branham v. ISI Alarms, Inc., 2013 U.S. Dist. LEXIS 124933, *28 (E.D. N.Y. Aug. 30, 2013) (holding that the defendants should have anticipated that the use of a system "to call a New York cell-phone number could subject them to being hauled into court in New York."); Heidorn v. BDD Marketing & Mgmt. Co., 2013 U.S. Dist. LEXIS 177166, *3, *25 (N.D. Cal. Aug. 9, 2013) (finding personal jurisdiction in TCPA case where calls were made to a California resident at a California number).[3]

---

[3] Abedi cites *Hudak v. Berkeley Grp., Inc.*, 2014 U.S. Dist. LEXIS 8168 (D. Conn. Jan. 23, 2014). However, that opinion does not specify whether the calls into Connecticut were made to a Connecticut number. Even if *Hudak* involved a non-Connecticut number, the Court would follow *Eisenband*, *Hastings*, and *Michaels*.

8

1    In sum, because New Age did not directly target California, there was no express aiming
2    and thus, no purposeful direction.  See Picot, 780 F.3d at 1214; Brayton Purcell, 606 F.3d at 1129.
3    Without purposeful direction, there is no personal jurisdiction.  See In re W. States, 715 F.3d at
4    742.  Therefore, dismissal of this case for lack of personal jurisdiction is appropriate.  See id.;
5    Hastings, 2015 U.S. Dist. LEXIS 167661 at *4-*7.
6    With the dismissal for lack of personal jurisdiction, all other pending motions will be
7    denied as moot.

## ORDER TO SHOW CAUSE

Rule 11 states in relevant part: "By presenting to the court a pleading . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . the factual contentions have evidentiary support, or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(3).  Rule 11 further states that: "On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)."  Fed. R. Civ. P. 11(c)(3).

Here, the Complaint contains allegations that are clearly false.  The complaint alleges that New Age conducts business in Merced County, California; see Complaint ¶ 14, that "[Abedi] was never a customer of [New Age]", see id. at ¶ 20, and that "[Abedi] never provided her cellular telephone number to [New Age] for any reason whatsoever."  Id.  However, Bock's unrebutted declaration shows that New Age has only locations in New Jersey and conducts no business outside of New Jersey.  See Bock Dec. ¶¶ 6, 7.  More importantly, Abedi's declaration and Bock's declaration both indicate that Abedi obtained services from New Age as part of Groupon and that Abedi provided her telephone number when she went to New Age to redeem the Groupon promotion.  See Abedi Dec. ¶ 4; Bock Dec. ¶¶ 3, 4, 8; see also Plaintiff's Opp. (Doc. No. 10) at 6:16-19 ("Defendant simply took a stack of intake forms, like then [sic] one filled out by Plaintiff, and decided one day to input all of the phone numbers provided on these forms by old customers into a weekly or bi-monthly robotexting campaign . . . .").  These declarations demonstrate the

9

falsity of the factual allegations in Paragraph 20; Abedi was a customer of New Age and did provide New Age with a cellphone number. The true facts were not uniquely within the possession of New Age, as Abedi herself would have known and did know that she was a customer (albeit on a limited basis in February 2015) and that she did provide her telephone number to New Age.

Given what appear to be demonstrably false allegations, it is appropriate for Plaintiff's counsel Todd Friedman (who signed the Complaint) and Mr. Friedman's law firm to show cause why sanctions should not be imposed for violation of Rule 11(b)(3).[4]

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction (Doc. No. 5) is GRANTED and this case is DISMISSED without prejudice;
2. Defendant's Rule 12(b)(3) motion to dismiss (Doc. No. 5) is DENIED as moot;
3. Defendant's motion to compel arbitration (Doc. No. 6) is DENIED as moot;
4. The Clerk is directed to CLOSE this case; and
5. As the Court retains jurisdiction, Within ten (10) days of service of this order, Plaintiff's counsel shall show cause in writing why they should not be sanctioned under Federal Rule of Civil Procedure 11, as discussed above.[5]

IT IS SO ORDERED.

Dated: June 22, 2018

_____
SENIOR DISTRICT JUDGE

---

[4] "Like the imposition of costs, attorney's fees, and contempt sanctions, the imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate. Such a determination may be made after the principal suit has been terminated." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396 (1990).

[5] The failure to timely show cause will result in finding a Rule 11 violation without further notice.